OPINION *Page 2 
{¶ 1} Defendant-appellant Donald Murphy appeals from the February 12, 2007, and February 15, 2007, Judgment Entries of the Stark County Court of Common Pleas, Family Court Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Donald Murphy and appellee Charlotte Murphy were married on April 27, 1990. No children were born as issue of such marriage.
 {¶ 3} On August 3, 2004, appellee filed a complaint for divorce against appellant. A Final Judgment Entry of Divorce was filed on December 14, 2004. The trial court, in its entry, ordered appellant to pay appellee spousal support in the amount of $1,341.00 a month for sixty (60) months. The trial court also divided the parties' marital property.
 {¶ 4} Appellant appealed from the trial court's December 14, 2004, Judgment Entry. Appellant, in his appeal, argued, in his fourth assignment of error, that the trial court had abused its discretion in dividing the parties' property. Pursuant to an Opinion filed on February 6, 2006, in Murphy v. Murphy, Stark App. No. 2005-CA-00101,2006-Ohio-557, this Court sustained such assignment, finding that because the Magistrate's Decision, which was adopted by the trial court, did not make any findings of fact regarding the value of the property distributed between the parties, we could not conduct a full appellate review. The judgment of the trial court was, therefore, reversed in part and the matter was remanded to the trial court.
 {¶ 5} Thereafter, the Magistrate, pursuant to an order filed on June 28, 2006, scheduled an evidentiary hearing for August 29, 2006. The Magistrate, in her order, *Page 3 
indicated that the sole issue on remand was the value of the marital property to be distributed. The matter was later continued to October 25, 2006.
 {¶ 6} On September 7, 2006, appellant filed a "Notice of Deposition and Request for Production of Documents." Appellant, in the same, indicated that he planned on taking appellee's deposition and that he had served on appellee's counsel a request for production of documents.
 {¶ 7} Thereafter, on September 21, 2006, appellee filed a Motion for a Protective Order. Appellee, in her motion, noted that this Court had remanded the matter because the trial court failed to make sufficient findings of fact regarding the property division and that a hearing was scheduled for October 25, 2006. Appellee further argued that "[u]pon a remand from the Court of Appeals of a partial reversal of a Trial Court Judgment, the parties are not permitted to conduct discovery." Finally, appellee, in her motion, requested that the trial court schedule a hearing on the three contempt motions that she had previously filed that were stayed by the trial court pending appeal to this Court. Appellee, in all three motions, had alleged that appellant failed to pay spousal support. Pursuant to a Judgment Entry filed on September 21, 2006, the trial court granted appellee's Motion for a Protective Order and scheduled a hearing on the contempt motions for October 25, 2006.
 {¶ 8} A hearing before a Magistrate was held on October 25, 2006. The Magistrate, in a decision dated December 14, 2006, but not filed until December 18, 2006, found that a custodian of records for the CSEA had testified that there was a spousal support arrearage of $22,662.03 plus poundage as of August 31, 2006. The Magistrate ordered that appellee's motions for contempt be, therefore, granted and that *Page 4 
appellant be sentenced to 30 days in jail. The Magistrate further ordered that the jail time be suspended on condition that appellant comply with court orders and make spousal support payments as ordered.
 {¶ 9} The Magistrate, in an Amended Magistrate's Decision filed on December 14, 2006, addressed the issues on remand. The Magistrate, in the Amended Magistrate's Decision, divided the parties' marital property including a number of guns.
 {¶ 10} On December 27, 2006, appellant filed an Objection to the Amended Magistrate's Decision. Appellant, in his objection, argued, in part, that the Magistrate's valuation of the guns was contrary to the evidence and the testimony presented. Appellant, in his objection, also objected to the Magistrate's contempt finding, arguing that he was unable to comply with the trial court's order regarding spousal support because the order exceeded his primary source of income. A hearing on appellant's objections was scheduled for February 12, 2007.
 {¶ 11} On January 11, 2007, appellee filed a Motion to Impose Suspended Sentence, asking the trial court to impose the suspended jail sentence ordered by the Magistrate in her December 18, 2006, decision. Appellee, in her motion, alleged that appellant had failed to pay spousal support for the second half of the month of December 2006 and the first half of the month of January of 2007. A hearing on appellee's motion was scheduled for February 12, 2007.
 {¶ 12} On February 9, 2007, appellant filed a motion for a continuance of the February 12, 2007 hearing. Appellant, in his motion, specially alleged as follows:
 {¶ 13} "Now comes the Defendant who hereby moves the Court for an order continuing the hearing set for Monday February 12, 2007 on Defendant's Objection to *Page 5 
Magistrate's Decision and the Plaintiffs Motion to Impose based upon the fact that on Saturday, January 29, 2007, the Defendant was hospitalized with pneumonia, stomach flu and blood infection. He is scheduled to undergo surgery on Tuesday, February 13, 2007 after which time he will be sent to rehabilitation for three to four weeks where he will be placed on inter venous antibiotics in order to clear up the blood infection." The trial court denied such motion.
 {¶ 14} Subsequently, the trial court, via a Judgment Entry filed on February 15, 2007, sustained appellee's Motion to Impose Suspended Sentence and ordered appellant to report to the jail on April 1, 2007. The trial court, in such entry, stated that "[t]he [appellant's] objections [to the Magistrate's decisions] are taken under advisement and a decision on same will issue."
 {¶ 15} The trial court, in a separate Judgment Entry filed the same day, overruled appellant's objections.
 {¶ 16} Appellant now appeals, raising the following assignments of error:
 {¶ 17} "I. APPELLANTS DUE PROCESS RIGHTS WERE VIOLATED WHEN HE WAS DENIED THE OPPORTUNITY FOR DISCOVERY PRIOR TO THE EVIDENTIARY HEARING ON HIS CONTEMPT ACTION.
 {¶ 18} "II. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN FINDING THE APPELLANT IN CONTEMPT WHEN APPELLANT HAD MET THE BURDEN OF PROOF ON HIS AFFIRMATIVE DEFENSE OF INABILITY TO PAY SPOUSAL SUPPORT.
 {¶ 19} "III. APPELLANTS DUE PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT DENIED HIS REQUEST FOR A CONTINUANCE AT HIS *Page 6 
IMPOSITION HEARING AND PROCEEDED IN ABSENTIA, AND DENIED HIS REQUEST FOR AN EVIDENTIARY HEARING, ALL PRIOR TO RULING ON THE OBJECTION FROM THE INITIAL CONTEMPT FINDING.
 {¶ 20} "IV. THE MAGISTRATE ERRED AND/OR ABUSED HER DISCRETION IN DETERMINING THE VALUE OF SEVERAL ITEMS OF PROPERTY."
 I {¶ 21} Appellant, in his first assignment of error, argues that his due process rights were violated when the trial court granted appellee's Motion for a Protective Order. Appellant specifically contends that his due process rights were violated when he was denied the opportunity to conduct discovery prior to the evidentiary hearing on his contempt action. We disagree.
 {¶ 22} There is no constitutional right to discovery. Midland SteelProducts Co. v. International Union, United Automobile, Aerospace andAgricultural Implement Workers of America, Local 486 (1991),61 Ohio St.3d 121, 131, 573 N.E.2d 98, citing Weatherford v. Bursey (1977),429 U.S. 545, 559, 97 S.Ct. 837. As noted by the court in Nozik v. MentorLagoons (July 2, 1998), Lake App. No. 97-L-004, 1998 WL 553170: "In fact, the only way that due process is implicated in the discovery context is in a criminal prosecution when the prosecution withholds exculpatory evidence. Brady v. Maryland (1963), 373 U.S. 83, 87,83 S.Ct. 1194, 10 L.Ed.2d 215. Thus, it follows that `[discovery is a technical procedural rule for civil and criminal trials. There is no constitutional support for the procedural right to discovery.'Harrison v. Dayton (Feb. 13, 1987), Montgomery App. No. 9796, unreported, at 7, 1987 Ohio App. LEXIS 5857." Id at 3.
 {¶ 23} Appellant's first assignment of error is, therefore, overruled. *Page 7 
 II {¶ 24} Appellant, in his second assignment of error, argues that the trial court erred in finding appellant in contempt when appellant had met the burden of proof on his affirmative defense of inability to pay spousal support. We disagree.
 {¶ 25} Failure to pay court-ordered spousal support is classified as a civil contempt. See Pugh v. Pugh (1984), 15 Ohio St.3d 136, 139-40,472 N.E.2d 1085. Because the nature of the contempt is civil, "willful disobedience" (i.e. intent) is not a necessary element. Pugh,15 Ohio St.3d at 140. However, inability to pay support is a valid defense in a contempt proceeding. Courtney v. Courtney (1984), 16 Ohio App.3d 329,334, 475 N.E.2d 1284. The party who failed to comply with the court order to pay support bears the burden of proving an inability to pay by the preponderance of the evidence. Pugh, 15 Ohio St.3d at 140, State exrel. Cook v. Cook (1902), 66 Ohio St. 566, 64 N.E. 567, paragraph one of the syllabus. See Piciacchia v. Piciacchia, Stark App. No. 2006CA00286,2007-Ohio-2328 at paragraph 27.
 {¶ 26} We will not reverse a contempt sanction absent an abuse of discretion by the trial court. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11, 417 N.E.2d 1249. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
 {¶ 27} Upon our review of the record, we find that the trial court did not abuse its discretion in finding appellant in contempt for failing to pay spousal support because the trial court's decision was not arbitrary, unconscionable or unreasonable. As is stated above, the trial court, in the Final Judgment Entry of Divorce, ordered appellant to pay *Page 8 
appellee spousal support in the amount of $1,341.00 a month for sixty (60) months. At the November 1, 2006, hearing before the Magistrate, Judy Vanmeter, the records custodian from the Child Support Enforcement Agency, testified that appellant should have paid a total of $31,901.16 in child support, not including poundage, but that appellant had only paid $9,239.13 plus processing charges of $75.69. She further testified that appellant owed $22,662.03 in spousal support and that "there were no months that he met the total obligation." Transcript of November 1, 2006, hearing at 22. According to Vanmeter, appellant paid no spousal support in September of 2004, January of 2005, October of 2005, April of 2006 and July of 2006.
 {¶ 28} Appellant, in support of his argument that he proved an inability to pay spousal support, notes that at the November 1, 2006, hearing, he testified that he was not able to work and had pneumonia for the third or fourth time in January of 2005. Appellant also points to testimony that he has been on oxygen for 24 hours a day 7 days a week since April of 2005 and had to take a breathing treatment every six (6) hours. Finally, appellant notes that testimony was adduced that he receives $1,167.00 a month from social security plus approximately a total of $50.00 a month in royalties from two (2) gas wells.
 {¶ 29} However, testimony was adduced at the hearing that appellant paid $593.00 a month to Capital One on one account and $350.00 a month on another Capital One account. Appellant also admitted that his monthly expenses added up to $2,400.00 a month and that he was current on such payments. Thus, there was evidence before the court that appellant's income was more than the $1,167.00 plus a *Page 9 
total of $50.00 a month in royalties that he claimed. Moreover, the following is an excerpt from appellant's testimony on cross-examination:
 {¶ 30} "Q. Now lets look back at your 2004 tax return.
 {¶ 31} "A. All right.
 {¶ 32} "Q. On line 34 you took a deduction for $6600.00 of spousal support that you had paid?
 {¶ 33} "A. That's right.
 {¶ 34} "Q. Could I see my exhibits please.
 {¶ 35} "A. But I paid $1100.00 by check direct to her and I had the checks to prove it.
 {¶ 36} "Q. Well you were always ordered to pay through the Agency can you show me in 2004 . . . you didn't pay $6600.00?
 {¶ 37} "A. I certainly did.
 {¶ 38} "Q. The records of the Agency don't show you paid . . .
 {¶ 39} "A. I don't care what the records of the Agency shows . . . I've got the canceled checks showing that she got $1100.00 a month for the whole twelve months of 2004.
 {¶ 40} "Q. Do you have those checks with you?
 {¶ 41} "A. No I don't.
 {¶ 42} "Q. Would you agree with me that the records of the Agency only show that you paid $3589.82 in 2004 in spousal support?
 {¶ 43} "A. Yeah but how many months was that?
 {¶ 44} "Q. You had three monthly payments through the Agency. *Page 10 
 {¶ 45} "A. Then I had . . .
 {¶ 46} "Q. And you took $6600.00 off your tax return right?
 {¶ 47} "A. Yes.
 {¶ 48} "Q. Now after the divorce was final you didn't make any more direct payments to your wife did you?
 {¶ 49} "A. No.
 {¶ 50} "Q. It was all through the Agency?
 {¶ 51} "A. Right.
 {¶ 52} "Q. Well your 2005 Federal income Tax return once again you don't have any oil and gas revenues included on this tax return. There's none here and you also have social security which again its [sic] not taxable it doesn't have to be on your tax return but you have $13,364.00 that year right that's what your W2 statement says?
 {¶ 53} "A. Okay all right." Transcript of November 1, 2006, hearing at 118-120.
 {¶ 54} Based on the foregoing, we find that the trial court's decision was not arbitrary, unconscionable or unreasonable. The trial court, as trier of fact, was in the best position to assess appellant's credibility and clearly did not find appellant to be a credible witness based on his inconsistent testimony. As is stated above, while appellant claimed monthly income of just over $1,200.00, he testified that he paid $2,400.00 a month on his bills. Moreover, we note that throughout this case, appellant claimed to have less income than his financial records indicated. The Magistrate, in the December 14, 2006, Amended Magistrate Decision, noted that the deposits into appellant's checking account exceeded his stated income and that appellant had no explanation for the source of such deposits. Additionally, as is stated above, testimony *Page 11 
was adduced at the hearing, that appellant took more deductions for spousal support than he was entitled to and did not report oil and gas revenues on his tax returns.[1]
 {¶ 55} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 56} Appellant, in his third assignment of error, contends that his due process rights were violated when the trial court denied his request for a continuance at his imposition of sentence hearing and proceeded in absentia, and denied his request for an evidentiary hearing, prior to ruling on the objection from the initial contempt. We agree.
 {¶ 57} There are at least three due process issues mentioned in this assignment of error, including whether an imposition of sentence hearing should have been held when the appellant was not present, whether the appellant was entitled to an evidentiary hearing on the motion to impose sentence when a request for said hearing was made and whether there was any sentence to be imposed. The third issue is what is discussed in appellant's brief and that is the issue we will address. See App.R. 12(A)(2) and App.R. 16(A)(7).
 {¶ 58} We find that it was an error of law and a violation of appellant's due process rights for the trial court to proceed with the hearing on the motion to impose, and to grant that motion, when there was no sentence to impose.
 {¶ 59} On December 18, 2006, a Magistrate's Decision was filed which, inter alia, found the appellant to be guilty of contempt on three motions for contempt, all alleging failure to pay spousal support. The Magistrate recommended a sentence of thirty days in jail suspended on the condition that the appellant comply with court orders and make *Page 12 
spousal support payments as ordered. This Magistrate's Decision was signed on December 14, 2006, by the Magistrate and on November 21, 2006, by the Judge. (We find no explanation in the file as to why the Judge's signature is dated three weeks prior to the Magistrate's signature.)
 {¶ 60} On December 27, 2006, appellant filed an objection to the Magistrate's Decision. Civ.R. 53(D)(4)(a) states, ". . . A magistrate's decision is not effective unless adopted by the court." Civ.R. 53(D)(4)(e)(i) states in part, ". . . If the court enters a judgment during the fourteen days permitted by Civ.R. 53(D)(3)(b)(i) for the filing of objections, the timely filing of objections to the magistrate's decision shall operate as an automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered." If we determine that the Magistrate's Decision filed December 18, 2006, was not properly signed by the court (because the Judge's signature was dated three weeks before the Magistrate's signature) then that decision was not effective pursuant to Civ.R. 53(D)(4)(a). If we determine that the Magistrate's Decision became a judgment of the court on its December 18th filing date, because the Judge may have actually signed the Magistrate's Decision after the Magistrate had signed, then the execution of that judgment was stayed upon the filing of objections on December 27, 2006.
 {¶ 61} In other words, under either analysis, there was no final judgment of the trial court finding appellant in contempt and ordering a suspended jail sentence.
 {¶ 62} In spite of that fact, appellee, on January 11, 2007, filed a Motion to Impose the "suspended jail sentence ordered by the Magistrate in her decision dated December 14, 2006." Also, in spite of that fact, the trial court held a hearing on the *Page 13 
Motion to Impose sentence on February 12, 2007, and issued a decision on that date sustaining the Motion to Impose and ordering the appellant to report to jail. At that time, the court had not yet ruled on the objections to the contempt findings made by the Magistrate and which formed the basis of the suspended jail sentence. The trial court heard arguments at the February 12, 2007, hearing regarding that Magistrate Decision but did not issue a decision making that Magistrate Decision an order of the court until after ordering the imposition of sentence. As a matter of fact, the trial court, in its entry imposing sentence, states, "The objections are taken under advisement and a decision on same will issue."[2] While we concede that the written judgment entry granting the Motion to Impose was actually filed only four minutes prior to the entry overruling the objections (February 15, 2007, at 3:45 P.M and February 15, 2007, at 3:49 P.M.), we find that the trial court clearly imposed sentence prior to ruling on the objection to the contempt finding which formed the basis for the suspended jail sentence.
 {¶ 63} An argument can be made that the trial court may have implicitly overruled the objections to the contempt finding of the Magistrate when the trial court imposed the sentence. The trial court, at the February 12, 2007, hearing, stated, "Well isn't the split second that I overrule objections mean that any stay that might have been in effect is instantly melts away and . . ." But, even if we were to accept this argument, we agree with what appellant's attorney replied to the trial court's previous statement, "Sure . . ., sure . . . I would say you're right Your Honor and then I would imagine that you would give the defendant an opportunity to comply." We agree that notice of what the sentence is, (30 days suspended on certain conditions), *Page 14 
and an opportunity to comply is required in order to afford due process to the appellant.
 {¶ 64} Appellant's third assignment of error is sustained.
 IV {¶ 65} Appellant, in his fourth assignment of error, argues that the Magistrate erred in determining the value of guns. We disagree.
 {¶ 66} The valuation of property in a divorce case is a question of fact. Covert v. Covert, Adams App. No. 03CA778, 2004-Ohio-3534, at paragraph 6. Accordingly, a trial court's decision pertaining to the valuation of property will be reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence. Id.
 {¶ 67} In dividing marital property, the Magistrate, in her December 14, 2006, Amended Magistrate's Decision, indicated that appellee possessed guns worth $5,845.00 plus $1,200.00 representing 5 guns that appellee had sold. The Magistrate further listed appellant as having $2,680.00 worth of guns. Appellant notes that these figures add up to $9725.00. According to appellant, "[n]o testimony that was presented nor documents received reflect that value of the guns at issue."
 {¶ 68} However, at the hearing before the Magistrate, appellee submitted an appraisal of the guns that was prepared by Dimmerling Realty and Auctioneers. This appraisal, which was admitted as Plaintiff's Exhibit 10, indicates that the value of all of the guns owned by the parties was $12,225.00. This figure does not include the $1,200.00 that appellee received after selling some guns. *Page 15 
 {¶ 69} The Magistrate, in her decision, determined that, during the parties' marriage, appellee received gifts of seven (7) guns valued at $2,400.00 and that these were appellee's separate property. The Magistrate further determined that at the time of the marriage, appellant owned three (3) guns valued at a total of $1,300.00 and that these were appellant's separate property. The value of the parties' separate property was thus $3,700.00 ($2,400.00 plus $1,300.00). Once this is deducted from the $12,225.00, we arrive at a figure of $8,525.00.[3] This is the total value of the guns awarded to the parties as part of the marital property division.
 {¶ 70} Based on the foregoing, we find that there was competent and credible evidence supporting the Magistrate's valuation of the guns.
 {¶ 71} Appellant's fourth assignment of error is, therefore, overruled. *Page 16 
 {¶ 72} Accordingly, the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed in part and reversed and remanded in part.
Edwards, J., and Delaney, J. concurs; Hoffman, P.J., concurs in part, dissents in part
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed and remanded in part. Costs assessed 75% to appellant and 25% to appellee.
[1] Appellant also never filed a sworn financial statement with the trial court.
[2] We concede that there were objections to other matters in addition to the contempt finding of the Magistrate, also before the trial court on February 12, 2007.
[3] If we add the $1,200.00 that appellee received for selling guns, we arrive at the $9,725.00 figure mentioned by appellant. *Page 17